UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.   07-61284-CIV-COHN
Magistrate Judge: Seltzer

MICHAEL KAYE,

      Plaintiff,

vs.

FOUNTAINE PAJOT, S.A.,
and WILLMAR USA, INC.

      Defendants.

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT, WILLMAR'S, MOTION TO DISMISS**

Plaintiff, MICHAEL KAYE (hereinafter "KAYE"), by and through his undersigned

counsel, and pursuant to the Federal Rules of Civil Procedure and Local Rule 7.1.C, files his

Response in Opposition to Defendant, WILLMAR USA, INC.'S Motion to Dismiss and states:

**SUMMARY OF PLAINTIFF'S RESPONSE IN OPPOSITION**

1.      Much of Defendant, WILLMAR'S, Motion to Dismiss is based on the basic

assumption that the "warranties and exclusions" and "limitation of damages" conditions of the

Sales Contract are written in clear, unambiguous and "conspicuous" language as required by

Florida law.  However, the "warranties and exclusions" and the "limitation of damages"

conditions of the Contract are not written in conspicuous language and therefore, they are legally

void under Florida law.  If a contractual term is legally void, it is as if the term is not in the

contract at all.  Simply stated, Defendant, WILLMAR'S, Motion to Dismiss Count IV (Breach of

Implied Warranties of Merchantability and Fitness for a Particular Purpose), Count V

-1-

(Revocation of Acceptance), and Count VI (Fraud in the Inducement) should be denied because the inconspicuous disclaimer terms that WILLMAR relies upon are void, which means the basis of WILLMAR'S argument is not part of the Contract.

2.      In contesting the fraud in the inducement claim, Defendant, WILLMAR, overlooks, or ignores, several important facts that are specifically alleged in the Complaint and incorporated by reference into Count VI.  More particularly, Plaintiff, KAYE, alleges in the Complaint that:  He specifically requested to see the written warranty for the Vessel before he signed the Contract [DE 1 at ¶ 17]; WILLMAR, (a Fountaine Pajot dealer), said it did not have a copy of the written warranty, but instead WILLMAR'S representative said "both WILLMAR and FOUNTAINE fully back the vessels they sell" [DE 1 at ¶ 18]; if he had been given a copy of the express warranty before he signed the Contract he would not have purchased it [DE 1 at ¶ 44] and, 16 C.F.R. § 702.3 requires KAYE be given a copy of the written warranty for the Vessel when he asked for it before he signed the Contract [DE 1 at ¶ 43].  The totality of the facts does provide independent support for a fraud in the inducement claim since KAYE asked for a copy of the express warranty for the Vessel before he signed the Contract, KAYE was not given a copy of the express warranty as required by Federal law, and Defendant, WILLMAR, knowingly said the Vessel was fully backed by it and the manufacturer, which was unquestionably a fraudulent statement intended to induce KAYE to buy the Vessel.  Further, Defendant, WILLMAR, cannot point to, or rely on the void, inconspicuous terms of the contractual disclaimers since they are void by operation of law.

3.      The only argument Defendant, WILLMAR, makes that is well taken is that the breach of oral express warranty claim (Count III) is barred by the Florida Statue of Frauds.

Plaintiff, KAYE, therefore voluntarily dismisses Count III.

## THE DISCLAIMERS ARE NOT CONSPICUOUS AND THEREFORE VOID

4. Plaintiff, KAYE, specifically alleges in ¶ 22 of the Complaint [DE 1] that the alleged disclaimer provisions of the Contract are not written in conspicuous terms because the disclaimer language was written in 6 point typeface, which is **smaller** than the 8 point typeface used for the other terms on the reverse side of the Sales Contract. In addition, Plaintiff, KAYE, alleges the disclaimer language and the other terms and conditions on the reverse side of the Contract (except paragraph 15) are written in the same color ink. While the disclaimer language is written in all capital letters, the fact that WILLMAR **reduced** the size of the lettering so it is the **smallest** typeface on the page renders it inconspicuous. Indeed, paragraphs 10 and 11 do not stand out from any of the other basic terms and conditions.

5. Defendant, WILLMAR, attempts to side-step the inconspicuous 6 point typeface used for the alleged disclaimer of warranties and limitation of damages conditions of the Contract by rewriting the disclaimers in larger typeface than that used on the reverse side of the Contract. Had it wished to be accurate in its motion, Defendant, WILLMAR, should have reduced the size of the typeface of the disclaimer so that it was smaller than the rest of the arguments in the motion.

6. Paragraph 11 on the reverse side of the Contract is written in the same 6 point typeface as the disclaimer in paragraph 10. In addition, the typeface in paragraph 11 is in the same color as all of the other provisions on the reverse side of the Contract, except for paragraph 15, which is the only conspicuous term on the reverse side.

7.      Florida Statute § 672.316(2) says:

> Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it, the language must mention merchantability and in case of a writing must be conspicuous; and, to exclude or modify any implied warranty of fitness, the exclusion must be by a writing and "conspicuous...."

8.      Florida Statute § 671.201(10) states:

> A term or clause is "conspicuous" when it is so written that a reasonable person against whom it is to operate ought to have noticed it.  A printed heading in capitals (as NON-NEGOTIABLE BILL OF LADING) is conspicuous.  Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color... Whether a term or clause is "conspicuous" or not is for decision by the Court.

9.      The only provision on the reverse side of the Contract that draws one's attention is paragraph 15 down at the very bottom of the page.  Paragraph 15 is written in all **bold** capital typeface that is **larger** than all of the other typeface on the page.  Now that's "conspicuous!"

10.      In *Rehurek v. Chrysler Credit Corporation*, 262 So.2d 452 (Fla. 2d DCA 1972), the Court held that an inconspicuous disclaimer of implied warranties is not legally effective even if the buyer read the disclaimer.  Stated in a different way, Florida law strictly requires sellers to use  "conspicuous" language for disclaimers in contracts or else the sellers' attempts at disclaiming implied warranties are rendered legally ineffective or void.  *See Id*.

11.      In a concurring and dissenting opinion in *Cate v. Dover Corporation*, 790 S.W.2d 559 (TX 1990), Justice Ray, while citing *Rehurek*, *supra*, said:

> I concur in that portion of the Court's opinion requiring that a written disclaimer of the implied warranty of merchantability must be conspicuous to a reasonable person.  I write separately, however, to take issue with the Court's immediate erosion of that standard by permitting a showing of actual knowledge of the

-4-

disclaimer to override a lack of conspicuousness.

The statute, on its face, provides for no actual knowledge exception. There is no room for judicial crafting of those omitted by the legislature. I would hold that the extent of a buyer's knowledge of a disclaimer is irrelevant to a determination of its enforceability under Section 2.316(b) of the U.C.C.

The effect of actual knowledge is subject to debate among leading commentators on commercial law. The purpose of the objective standard of conspicuousness adopted by the Court today reflects the view that "the drafters intended a rigid adherence to the conspicuousness requirement in order to avoid arguments concerning what the party said about the warranties at the time of sale . . . **an absolute rule that an inconspicuous disclaimer is invalid, despite the buyer's actual knowledge, encourages sellers to make their disclaimers conspicuous, thereby reducing the need for courts to evaluate swearing matches as to actual awareness in particular cases**. . . . today's decision condemns our courts to a parade of such cases. [Emphasis added.]

Justice Ray cited and relied upon the Florida court's decision in *Rehurek*, *supra*, for the proposition that an inconspicuous disclaimer is ineffective even though the buyer admits having read it before the purchase.

12.     While Plaintiff, KAYE, did not read the inconspicuous disclaimers contained on the reverse side of the Sales Contract [DE 1 at ¶ 23], *Rehurek* is important because it emphasizes that disclaimers of warranties must be in conspicuous language or else they are not enforceable even if the buyer read the condition.

13.     Defendant, WILLMAR'S arguments that Plaintiff, KAYE, is legally precluded from asserting breach of implied warranties of merchantability and fitness for a particular purpose, fraud in the inducement and revocation of acceptance claims because of the "clear and unambiguous language of the contract" is without merit because the attempted disclaimers are

inconspicuous and legally void.  *See, Rehurek v. Chrysler Credit Corporation*, 262 So.2d 452 (Fla. 2d DCA 1972).

### THERE IS MORE TO PLAINTIFF'S FRAUDULENT INDUCEMENT CLAIM THAN SUGGESTED BY DEFENDANT, WILLMAR

14.     Defendant, WILLMAR, attempts to down play its fraudulent conduct in persuading Plaintiff, KAYE, to purchase the subject Vessel.  More particularly, Defendant, WILLMAR, tries to focus this Court's attention on WILLMAR'S statement "both Fountaine and Willmar fully back the vessels they sell" as mere puffery or, in the alternative, a legally unenforceable promise to do something in the future.

15.     However, Plaintiff, KAYE, alleged a lot more facts about the events that occurred before the Contract was signed.  Plaintiff, KAYE, specifically alleges that:   [He] requested Defendant, WILLMAR, to provide him with a copy of the written warranty for the Vessel before he signed the Contract [DE 1 at ¶ 17]; Defendant, WILLMAR, advised [him] that it did not have a copy of the written warranties provided for the Fountaine Pajot vessel, but assured him that "both Willmar and Fountaine fully back the vessels they sell [DE 1 at ¶ 18]; If he been provided a properly labeled copy of the written limited warranty before he signed the Sales Contract, then he would not have purchased the Vessel [DE 1 at ¶ 44]; 16 C.F.R. § 702.3 required that he be given a copy of the written warranty before he signed the contract [DE at ¶ 43]; and that Defendant, WILLMAR, knowingly and intentionally told him that WILLMAR and FOUNTAINE fully back the vessels they sell in order to induce him to buy the Vessel [DE at ¶¶ 79 - 87.]

16.     The Federal Trade Commission regulations regarding the Magnuson-Moss

Warranty Act required Defendants, FOUNTAINE and WILLMAR, to provide Plaintiff, KAYE, with a copy of all written warranties for the Vessel before KAYE signed the Contract. *See* 16 C.F.R. § 702.3.

17.     In essence, Defendant, WILLMAR, did not engage in simple "puffery."  Rather, Defendant, WILLMAR, intentionally deprived Plaintiff, KAYE, of a copy of the written limited warranty for the Fountaine Pajot vessel and intentionally misrepresented that a full warranty was provided in order to induce KAYE to buy the boat.

18.     A great case explaining when one can and cannot sue for fraud in the inducement is *La Pesca Grande Charters, Inc. v. Moran*, 704 So.2d 710 (Fla. 5th DCA 1998).  In *La Pesca*, *supra*, the Court reviews various cases and confusion caused by "fraud in the inducement to contract" versus "fraud in the performance of the contract."  The *La Pesca* Court held that the buyer of a vessel could sue the seller for fraud in the inducement because of two false statements that were made during the negotiation process that induced the buyer to purchase the vessel.

19.     Defendant, WILLMAR, (a) withheld a copy of the written limited warranty from Plaintiff, KAYE and (b) said the vessel was fully backed by WILLMAR and FOUNTAINE. Like the situation in *La Pesca*, *supra*, Defendant, WILLMAR, can be held liable for fraudulently inducing KAYE to enter into the Sales Contract.

<u>**CONCLUSION**</u>

WHEREFORE, Plaintiff, MICHAEL KAYE, requests the Honorable Court to deny Defendant, WILLMAR USA, INC.'S Motion to Dismiss.  If, however, the Court believes one or more of the relevant counts fails to state a cause of action, then Plaintiff, KAYE, requests the Court to dismiss such claim(s) without prejudice and give him leave to file an amended

complaint.

Respectfully submitted,

STROUP & MARTIN, P.A.
Attorneys for Plaintiff
119 Southeast 12th Street
Fort Lauderdale, Florida 33316
Telephone: (954) 462-8808
Telefax: (954) 462-0278
fmartin@strouplaw.com

By: /s/ Farris J. Martin, III
    FARRIS J. MARTIN, III
    Florida Bar No. 0879916

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true copy of the foregoing has been furnished

electronically to the Court via EC/CMF and also furnished to: Jeffrey W. Miller, Esq., Kurt

Bosshardt & Assoc., P.A., Counsel for Defendant, WILLMAR USA, INC.,1600 S.E. 17th St.

Causeway, Suite 405, Ft. Lauderdale, FL 33316; and Alan L. Landsberg, Esq., Bunnell, Woulfe,

Counsel for Defendant, FOUNTAINE PAJOT, S.A., One Financial Plaza 100 S.E. 3rd Ave. - 9th

Floor, Ft. Lauderdale, FL 33394 this 16st day of November, 2007.

STROUP & MARTIN, P.A.
Attorneys for Plaintiff
119 Southeast 12th Street
Fort Lauderdale, Florida 33316
Telephone: (954) 462-8808
Telefax: (954) 462-0278
fmartin@strouplaw.com

By: /s/ Farris J. Martin, III
    FARRIS J. MARTIN, III
    Florida Bar No. 0879916