

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 07-61284-CIV-COHN/SELTZER

BLUEWATER TRADING LLC,
a/k/a BLUE WATER TRADING, LLC,
a Delaware Limited Liability Company,

   Plaintiff,

v.

FOUNTAINE PAJOT, S.A., and
WILLMAR USA, INC.,

   Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT WILLMAR USA'S MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant Willmar USA's Motion to Dismiss Plaintiff's Amended Complaint [DE 63]. The Court has considered the Motion, Plaintiff's Response [DE 81], and the record, and is otherwise fully advised in the premises.

### I. Background and Procedural History

The allegations in Plaintiff's Amended Complaint arise out of the purchase of a new 2005 37' Fountaine Pajot Maryland catamaran power trawler from dealer Willmar USA. On or about November 16, 2005, Mr. Michael Kaye, a representative of Bluewater Trading, executed the Sales Contract to purchase the vessel for the sum of $335,000.00 from Willmar. At the time he purchased the vessel, Mr. Kaye alleges he asked about the warranty and was told that although Willmar did not have a copy of the written warranties provided for Fountaine Pajot vessels, "both Willmar and Fountaine

fully back the vessels they sell." Mr. Kaye executed a Sales Contract, which includes the following paragraph:

> Warranties and Exclusions. Buyer understands that there may be written warranties covering the rig purchased, or any component(s) which have been provided by the manufacturers. Dealer has given Buyer and Buyer has read and understands a statement of the type of warranty covering the rig purchased and/or component(s) before Buyer signed this sales contract. There is no express warranty on used rigs, except where prohibited by law. (I) Delivery by Dealer to Buyer of the warranty by the manufacturer of the rig purchased or any component(s) does not mean dealer adopts the warranty(s) of such manufacturer(s), (II) Buyer acknowledges that these express warranties made by the manufacturer(s) have not been made by Dealer even if they say Dealer made them or say dealer made some other express warranty, and (III) Dealer is not an agent of the manufacturer(s) for warranty purposes even if dealer completes or attempts to complete repairs for the manufacturer(s) except in WV, MS, WI, or where otherwise prohibited by law. (I) Buyer understands that the implied warranties of merchantability and fitness for a particular purpose and all other warranties expressed or implied are excluded by dealer from this transaction and shall not apply to the rig or any component contained therein, (II) Buyer understands that Dealer makes no warranties whatsoever regarding this rig or any component contained therein, and (III) Buyer understands that dealer disclaims and excludes from this transaction all warranty obligations which exceed or exist over and above the legal warranties required by applicable state law.

The "Warranties and Exclusions" title is written in boldface, all-capitals type, and is underlined, similar to other paragraph titles on the page. The text of the paragraph is written in all capital letters, but in a smaller font size than the other type on the page. The paragraph appears on the back of the Sales Contract, but the statement "NOTE: WARRANTY AND EXCLUSIONS AND LIMITATION OF DAMAGES ON THE REVERSE SIDE" appears on the front, just above the signature block, in large, contrasting color, all-capitals type. Plaintiff alleges that Mr. Kaye did not observe or read the disclaimer language cited above.

2

The Sales Contract also includes the following paragraph regarding damages:

> Limitation of Damages. Except in WV and any other state which does not allow the limitation of incidental and/or consequential damages, the following limitation of damages shall apply if any warranty fails because of attempts at repair are not completed within a reasonable time or any reason attributed to the manufacturer, including manufacturers who have gone out of business. Buyer agrees that if Buyer is entitled to any damages against Dealer, Buyer's damages are limited to the lesser of either the cost of needed repairs or reduction in the market value of the rig caused by the lack of repairs. Buyer also agrees that once Buyer has accepted the rig, even though the manufacturer's warranty does not accomplish its purpose that Buyer cannot return the rig to dealer and seek a refund for any reason.

This language appears in identical type size and style to the "Warranties and Exclusions" paragraph.

## II.   Motion to Dismiss Standard

Until the recent Supreme Court decision in Bell Atlantic Corp. v. Twombly, 550 U.S. —, 127 S.Ct. 1955 (2007), courts routinely followed the rule that, "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Marsh v. Butler County, 268 F.3d 1014, 1022 (11th Cir. 2001). However, pursuant to Twombly, to survive a motion to dismiss, a complaint must now contain factual allegations which are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." 127 S. Ct. at 1965. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

3

action will not do." Id. at 1964-65. Taking the facts as true, a court may grant a motion to dismiss when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

### III. Discussion

Defendant Willmar argues that each of Counts III through VI in Plaintiff's Amended Complaint should be dismissed. First, Willmar argues that Count III should be dismissed because the Sales Contract properly disclaims any implied warranties. Similarly, Willmar also argues that Count IV should be dismissed, because a valid disclaimer of warranty prohibits revocation of the contract, and additionally, because Plaintiff's delay in seeking revocation and adequate legal remedy bar revocation. Third, Willmar argues that Counts V and VI for fraud in the inducement and negligent misrepresentation should be dismissed for several reasons. Willmar also argues that Plaintiff's claims for fraud and negligent misrepresentation should be dismissed because they were not pled with specificity as required by Fed. R. Civ. P. 9(b). Finally, Willmar argues that Plaintiff's claims for incidental and consequential damages should be dismissed based on the "Limitation of Damages" provision in the Sales Contract. The Court considers each of these arguments in turn.

#### A.   *Count III: Claim for Breach of Implied Warranty of Merchantability and Fitness for a Particular Purpose*

Willmar first argues that Count III of the Amended Complaint should be dismissed because the Sales Contract properly disclaims any implied warranties. Plaintiff argues in response that the disclaimer language on which Defendant relies is

4

invalid because it is not written in conspicuous terms, as required by Florida statute.

Under Florida law, "to exclude or modify the implied warranty of merchantability or any part of it, the language must mention merchantability and in case of a writing must be conspicuous; and, to exclude or modify any implied warranty of fitness, the exclusion must be by a writing and conspicuous." Fla Stat. §672.316 (2007). A determination as to whether or not a term is conspicuous is a decision for the court. Fla. Stat. §671.201(10) (2007). "Language in the body of a record or display in type larger than that of the surrounding text; in a type, font, or color in contrast to the surrounding text of the same size; or set off from surrounding text of the same size by symbols or other marks that call attention to the language" is deemed to be conspicuous. Id.

The disclaimer contained in the Sales Contract is written in all capital letters, but in a smaller font size than the surrounding text, resulting in letters that are approximately the same size as the upper- and lower-case text in other paragraphs. Although printing a disclaimer in all capital letters is a commonly used method of making it conspicuous,[1] the statutory definition of the term "conspicuous" clearly states that language is conspicuous when it is presented "in a type, font, or color in contrast to the surrounding text *of the same size.*" Fla. Stat. §671.201(10) (*emphasis added*).

---

[1] The Court does not disagree with Defendant's assertions that text presented in all capital letters can be found to be conspicuous. In several cases cited by Defendant, courts have found that a disclaimer presented in all capital letters was conspicuous. See Chmura v. Monaco Coach Corp., 2006 U.S. Dist. LEXIS 11217, *10 (M.D. Fla. 2006); Monsanto Agricultural Products Co. v. Edenfield, 426 So.2d 574, 578 (Fla. 1st DCA 1983); Pinellas Suncoast Transit Authority v. Mincom, 2007 U.S. Dist. LEXIS 30018, *6 (M.D. Fla. 2007). However, it simply does not follow that *any* text presented in all capital letters is conspicuous.

Thus, presenting text in an all-capitals type in contrast to the surrounding text, but making it smaller than the surrounding text, does not fulfill the requirement that the contrasting type be of the same size. In light of the clear statutory definition, and this Court's own examination of the Sales Contract, the Court concludes that the disclaimer language is not conspicuous.

Furthermore, the disclaimer language in the Sales Contract cannot be rendered conspicuous by the fact that it includes, on the front side of the document, the statement "NOTE: WARRANTY AND EXCLUSIONS AND LIMITATION OF DAMAGES ON THE REVERSE SIDE." In the event that such a statement were not included on the front of the document, the disclaimer on the back would almost certainly be found to be inconspicuous. Rudy's Glass Construction Co. v. E.F. Johnson Co., 404 So.2d 1087, 1089 (Fla. 3rd DCA 1981). However, all that the Florida courts have concluded on this point is that "an otherwise conspicuous disclaimer located on the reverse side of a contract is not rendered inconspicuous if the front of the document contains a noticeable reference to terms and conditions which are located on the reverse side." Id. Because this Court concludes that the disclaimer language itself is not conspicuous in any event, it matters not whether the statement was included on the front of the document.

Accordingly, the Court concludes that the disclaimer language in the Sales Contract is not conspicuous, under Florida law, and thus, the disclaimer is invalid. Defendant's Motion to Dismiss as to Count III of the Amended Complaint will be denied.

**B.    *Count IV: Claim for Revocation of Acceptance***

Willmar next argues that Count IV of the Amended Complaint, Plaintiff's Claim

6

for Revocation of Acceptance, should be dismissed.  In light of the Court's conclusion that the disclaimer of warranty in the Sales Contract was not conspicuous, this provision cannot bar the claim for revocation.  The disclaimer is invalid, as a matter of law, and so cannot prohibit revocation of the contract.  However, Willmar's other arguments in favor of dismissing Count IV are more persuasive, and were not contested in Plaintiff's Response to the Motion.  Kaye has advanced no explanation for the reasonableness of his twenty-month delay in seeking revocation, either in the Amended Complaint or his Response, nor has he provided any reason why the legal remedies available to him are inadequate.  The equitable remedy of rescission may only be awarded where no adequate remedy at law is available.  See, e.g., Central Florida Antenna Service v. Crabtree, 503 So.2d 1351, 1353 (Fla. 5th DCA 1987).  Accordingly, Count IV of the Amended Complaint will be dismissed for failure to state a claim upon which relief may be granted.

    **C.**    ***Counts V and VI:  Claims for Fraud in the Inducement and Negligent Misrepresentation***

Willmar next argues that Plaintiff's claims for fraud and negligent misrepresentation should be dismissed because (1) the alleged false representation does not relate to a past or existing fact, (2) as a matter of law, Plaintiff's reliance upon the alleged misrepresentations was unreasonable, (3) Plaintiff had a full and adequate opportunity to investigate and confirm the alleged representation, (4) Plaintiff's fraud claim is inextricably tied to his breach of contract/warranty claims and is barred by Florida's economic loss rule, and (5) Plaintiff has failed to plead these claims with specificity as required by Federal Rule of Civil Procedure 9(b).

7

To state a claim for fraud in the inducement, a plaintiff must allege the following elements:

(1) That the defendant misrepresented a material fact;

(2) That the defendant knew or should have known that the statement was false;

(3) That the defendant intended that the representation would induce the plaintiff to enter into a contract or business relation; and

(4) That the plaintiff was injured by acting in justifiable reliance on the misrepresentation.

Barnes v. Burger King Corp., 932 F.Supp. 1420, 1425 (S.D. Fla. 1996). The elements are the same for a claim of negligent misrepresentation, except that the element of knowledge is not required to establish scienter. Butterworth v. Quick & Reilly, 998 F.Supp. 1404, 1411 (M.D. Fla. 1998).

Although Willmar makes several arguments as to why Counts V and VI of the Amended Complaint should be dismissed, the second of these arguments is dispositive, and so the Court need not consider the others. Willmar argues that Plaintiff's reliance upon the alleged misrepresentations was, as a matter of law, unreasonable because the contract did not include the alleged misrepresentations. Willmar cites case law establishing that "it is a basic tenet of contract law that reliance on representations by a contracting party in a suit based on the contract is unreasonable where the representations are not contained in the subsequent written agreement between the parties." Barnes, 932 F. Supp. at 1428. However, Plaintiff argues that because its suit is for fraud in the inducement, rather than a suit for fraud in the performance of the contract, Kaye's reliance was not, as a matter of law,

unreasonable. In support of this argument, Plaintiff cites to <u>La Pesca Grande Charters, Inc. v. Moran</u>, which held that because a claim for fraud in the inducement of a contract and a claim for breach of contract are separate and distinct claims, it was error to dismiss one simply because the damages sought were the same for both. 704 So.2d 710, 712 (Fla. 5th DCA 1998).

While it is certainly true that a claim in tort for fraud in the inducement and a claim for breach of a contract are separate claims, it does not follow that a term in a contract cannot render reliance on a prior misrepresentation unreasonable. As the <u>La Pesca</u> court itself noted, "the victim of a fraud can agree by contract, however, to forego reliance on any prior false representation and limit his reliance to the representations that are expressly contained in the contract." <u>Id.</u> at 712 n.1. Furthermore, the Eleventh Circuit has held that a merger clause in the contract itself can render unreasonable any reliance on misrepresentations covered by the contract. <u>Pettinelli v. Danzig</u>, 722 F.2d 706, 710 (11th Cir. 1984). Other courts in the Southern District of Florida have interpreted this precedent similarly. In <u>Barnes</u>, the court relied upon language in the contract that was contradictory to the alleged misrepresentations in concluding that the plaintiff's reliance on the misrepresentations was, as a matter of law, unreasonable. 932 F. Supp. at 1428. Similarly, in <u>Eclipse Medical, Inc. v. American Hydro-Surgical Instruments, Inc.</u>, the court concluded that a claim for fraudulent inducement would fail not only where the contract specifically contradicts the misrepresentation, but also even where the contract "simply says nothing about the allegedly false promise." 262 F.Supp.2d 1334, 1342 (S.D. Fla. 1999).

The Sales Contract that Mr. Kaye signed contains the following term: "The terms

and conditions on both sides of this contract contains [sic] the entire understanding between dealer and buyer and that no other representation or inducement, verbal or written, has been made which is not included in this contract of sale." (Sales Contract, p. 2 [DE 57-2].) This language is written in bold, all capitals, and in a typeface that is larger than the surrounding type; even Plaintiff refers to this language as being conspicuous (Plaintiff's Response, p. 4 [DE 81].) In light of this contractual language, the Court concludes that even if Plaintiff's allegations regarding the misrepresentations are proven, any reliance on those misrepresentations was unreasonable as a matter of law in light of the merger clause in the subsequent contract, which Plaintiff all but concedes Kaye saw or should have seen. Thus, Counts V and VI of the Amended Complaint will be dismissed for failure to state a claim upon which relief may be granted.

### D.    *Incidental and Consequential Damages*

Finally, Willmar argues that the limitation of damages provision in the Sales Contract bars recovery of incidental and consequential damages, and Plaintiff's claims for such damages should be dismissed. In Count III of the Amended Complaint, Plaintiff's remaining claim against Defendant Willmar, Plaintiff seeks "compensatory damages up to the 'full purchase price' of the Vessel, plus incidental and consequential damages, collateral charges, the cost of any equipment added to the Vessel, and finance charges." Pursuant to Florida statute, "[c]onsequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not."

Fla. Stat. §672.719 (2007). The Sales Contract signed by Kaye does, in fact, include such a limitation, providing as follows:

> Buyer agrees that if Buyer is entitled to any damages against Dealer, Buyer's damages are limited to the lesser of either the cost of needed repairs or reduction in the market value of the rig caused by the lack of repairs. Buyer also agrees that once Buyer has accepted the rig, even though the manufacturer's warranty does not accomplish its purpose that Buyer cannot return the rig to dealer and seek a refund for any reason.

(Sales Contract, p. 2 [DE 57-2].)

Plaintiff argues that this "Limitation of Damages" provision in the Sales Contract, like the "Warranties and Exclusions" provision, is legally void under Florida law because it is not written in conspicuous language. However, Plaintiff points to no statutory requirement that a Limitation of Damages clause be conspicuous, and the Court can find none. In a separate subsection of the statutory provision that requires conspicuous presentation of any exclusions or modifications of the implied warranty of merchantability, the statute provides that "remedies for breach of warranty can be limited in accordance with the provisions of this chapter on liquidation or limitation of damages and on contractual modification of remedy (ss. 672.718 and 672.719)." Fla. Stat. §672.316 (4) (2007). Neither Section 672.718 nor Section 672.719 includes on its face any requirement that a Limitation of Damages clause in a contract be conspicuous. The only requirement regarding the conspicuousness of contractual provisions in these sections is the very specific requirement that language excluding or modifying the implied warranty of merchantibility or the implied warranty of fitness be conspicuous. Given no clear statutory language, and no law cited by Plaintiff in support of its contention that the "Limitation of Damages" clause was required to be printed in

conspicuous language, this Court declines to infer such a requirement. Accordingly, Plaintiff may not recover any incidental or consequential damages that are precluded by the "Limitation of Damages" provision in the Sales Contract.

## IV.   Conclusion

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendant Willmar USA's Motion to Dismiss Plaintiff's Amended Complaint [DE 63] is **GRANTED in part and DENIED in part**. The case will proceed against Defendant Willmar USA as to Count III of the Amended Complaint only.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 2nd day of April, 2008.

JAMES I. COHN
United States District Court

Copies provided to:

Counsel of record