UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 07-61284-CIV-COHN/SELTZER

BLUEWATER TRADING LLC,
a/k/a BLUE WATER TRADING LLC,
a Delaware Limited Liability Company,

        Plaintiff,

v.

FOUNTAINE PAJOT, S.A., and
WILLMAR USA, INC.,

        Defendants.
_____/

SCANNED

## ORDER GRANTING DEFENDANT FOUNTAINE PAJOT, S.A.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

**THIS CAUSE** is before the Court upon Defendant Fountaine Pajot, S.A.'s Motion to Dismiss Amended Complaint [DE 60], incorporating arguments made in prior filings [DE 18, 72]. The Court has considered Fountaine's Motion, Plaintiff Bluewater Trading LLC's Response [DE 93], Fountaine's Reply [DE 94], and the record, and is otherwise fully advised in the premises.

**I.**    **Factual and Procedural Background**

The allegations in Plaintiff's Amended Complaint arise out of the purchase of a new 2005 37' Fountaine Pajot Maryland catamaran power trawler from dealer Willmar USA. On or about November 16, 2005, Mr. Michael Kaye executed the Sales Contract to purchase the vessel for the sum of $335,000.00 from Willmar. At the time he purchased the vessel, Mr. Kaye alleges he asked about the warranty and was told that although Willmar did not have a copy of the written warranties provided for Fountaine

Pajot vessels, "both Willmar and Fountaine fully back the vessels they sell." Mr. Kaye then created Bluewater in Delaware on November 28, 2005 and assigned his interest in the Sales Contract to Bluewater. The vessel was delivered to Mr. Kaye/Bluewater in the Virgin Islands on January 4, 2006. Willmar did not provide Mr. Kaye with a copy of the written warranty for the vessel at the time of delivery. Following delivery of the vessel, Mr. Kaye discovered a number of defects in the vessel and its equipment, which are enumerated in detail in the Amended Complaint.

Following discovery of many of these defects, Mr. Kaye notified Willmar and Fountaine of the defects and demanded a copy of the written warranty as well as warranty services to fix the defects. A copy of the written warranty was provided to him on February 14, 2006.

Fountaine is a French corporation that maintains its principal place of business in La Rochelle, France. Through jurisdictional discovery, the Plaintiff has obtained evidence of certain contacts between Defendant Fountaine and the United States, and specifically with the state of Florida. Fountaine has exhibited its vessels each year, from 1997 through 2008, at the Miami International Boat Show, and sends representatives each year to Miami to participate in the boat show. The company communicates with representatives of the boat show each year, and transfers funds to pay for its exhibition space each year. Fountaine's Directeur General Deleague, Eric Bruneel, also typically has a dinner meeting with Willmar's Vice President Philippe Guillemin during the boat show each year to discuss customer attendance. Fountaine also attended and exhibited its vessels at the Annapolis Boat Show during 2004, 2005, and 2007.

Fountaine also contracts with American companies to perform warranty repairs to Fountaine Pajot vessels. From 2005 through 2008, Fountaine has contracted with Nautic & Co. America Inc., in Fort Lauderdale, Florida, for warranty repairs on several vessels. Fountaine also contracted with a repair company in the Tampa/St. Petersburg, Florida area to perform warranty repairs on a vessel in 2007.

Fountaine markets its vessels in the United States. Fountaine provides catalogs, brochures, and pricing information to Willmar for Willmar's use in marketing and selling Fountaine Pajot vessels. From 2005 through 2008, Fountaine has placed advertisements in Cruising World and Passage Maker magazines. From 2005 through 2007, Fountaine placed advertisements in Power Cruising magazine. Fountaine communicates regularly with Willmar, sending approximately ten emails per week to Willmar regarding potential customers, warranty claims, and product information.

In its Amended Complaint, Plaintiff Bluewater asserts a claim under the Magnuson-Moss Federal Trade Commission Act against Fountaine in Count I, and asserts a Florida Deceptive and Unfair Trade Practices Act Claim against Fountaine in Count II.

## II. Analysis

The Plaintiff has the burden of establishing a *prima facie* case of personal jurisdiction. Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino, 447 F.3d 1357, 1360 (11th Cir. 2006). A *prima facie* case is established if the Plaintiff presents enough evidence to withstand a motion for directed verdict. Id. Where the Defendant produces affidavits contrary to the allegations in the Complaint, the burden shifts back to the Plaintiff to produce evidence supporting personal jurisdiction; if the affidavits of

the Defendant and Plaintiff conflict, the Court must construe all reasonable inferences in favor of the Plaintiff. Id.

### A.     *Applicable Legal Basis for Jurisdiction*

Federal courts must ground their personal jurisdiction on a federal statute or rule. Omni Capital Intern. v. Rudolf Wolff & Co., 484 U.S. 97, 101 (1987).  Plaintiff Bluewater, in both its Complaint and its Response to this Motion, does not clearly state the statute or rule upon which it is basing its argument that personal jurisdiction should be asserted over Defendant Fountaine.[1]  The Plaintiff argues more generally that because this case arises under this Court's federal question subject matter jurisdiction, the Court should consider only whether or not the Defendant has the requisite "minimum contacts" with the United States as a whole, rather than with Florida specifically.  In support of this position, Plaintiff cites to United States Securities and Exchange Commission v. Carrillo, where the Eleventh Circuit held that "the applicable forum for minimum contacts purposes is the United States in cases where, as here, the court's personal jurisdiction is invoked based on a federal statute authorizing nationwide or worldwide service of process." 115 F.3d 1540, 1544 (11th Cir. 1997).  However, unlike the statute at issue in Carrillo, the Magnuson-Moss Act does not authorize nationwide service. Weinstein v. Todd Marine Enterprises, 115 F. Supp. 2d 668, 671 (E.D. Va. 2000).  The Supreme Court addressed this situation in Omni, and concluded there that because the applicable statute under which the suit arose did not authorize

---

[1] Plaintiff's reliance on Carrillo would suggest that it may take the position that the Magnuson-Moss Act itself provides a basis for the exercise of personal jurisdiction. This position would be incorrect.

4

nationwide service of process, the Court should look to the second sentence of Fed. R. Civ. P. 4(e), which points to the long-arm statute of the forum state. 484 U.S. at 108. Thus, this Court should first look to the Florida long-arm statute as the basis for the exercise of personal jurisdiction in this case.

Since Omni was decided, however, the Federal Rules of Civil Procedure were amended to include Rule 4(k)(2). This Rule provides a basis for the assertion of personal jurisdiction in cases arising under federal law even where a defendant would not be subject to jurisdiction in any individual state. Thus, the Court also analyzes below whether or not personal jurisdiction may be asserted on the basis of national contacts under Rule 4(k)(2).

**B.     *Florida Long-Arm Statute***

Federal Rule of Civil Procedure 4(k)(1) states that serving a summons establishes personal jurisdiction over a defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located. In its Amended Complaint, Plaintiff Bluewater asserts that the Defendants are subject to personal jurisdiction in the State of Florida based on their operation of a business venture in the state, substantial activity in the state, commission of tortious acts within the state, and/or commission of one or more of the acts stated in Florida Statutes §§ 48.081, 48.181, or 48.193. (Amended Complaint [DE 57], p. 3-4.) To determine whether the Court has jurisdiction over a nonresident Defendant pursuant to the Florida long-arm statute, it must undertake a two-part analysis. First, the Court must determine whether the Florida long-arm statute provides a basis for personal jurisdiction, and if so, the Court must then determine whether sufficient minimum contacts exist between the

Defendant and the forum state, Florida, so as to satisfy "traditional notions of fair play and substantial justice" under the Due Process Clause of the Fourteenth Amendment. Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626 (11th Cir. 1996).

Under the Florida long-arm statute, jurisdiction can be general or specific. General jurisdiction may be found where a defendant "is engaged in substantial and not isolated activity within [Florida]." Fla. Stat. § 48.193(2) (2008). To establish jurisdiction under this provision, the defendant's activities must be "considered collectively and show a general course of business activity in the state for pecuniary benefit." Stubbs, 447 F.3d at 1361. Furthermore, to comport with due process, a non-resident defendant over whom general jurisdiction is being asserted must have contacts with the forum state that are "substantial, showing continuous and systematic contacts between the defendant and the forum state." Rogers v. Nacchio, 241 Fed. Appx. 602, 606 (11th Cir. 2007). Courts have held that these two requirements are equivalent: if a defendant's activities in the state of Florida meet the requirements of section 48.193(2), the "continuous and systemic contacts" prong of the Due Process Clause analysis is satisfied. Autonation v. Whitlock, 276 F. Supp. 2d 1258, 1262 (S.D. Fla. 2003). To support the assertion of general jurisdiction, "[t]he defendant's contacts with the forum 'must be so extensive to be tantamount to [a defendant] being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in [the forum state's courts] in any litigation arising out of any transaction or occurrence taking place anywhere in the world.'" Baker v. Carnival Corp., 2006 WL 3360418, *2 (S.D. Fla. 2006).

Defendant Fountaine's limited activity in the state of Florida does not constitute

6

the kind of continuous and systematic activity required for general jurisdiction to be asserted. At most, Plaintiff's allegations and evidence establish that Fountaine places advertisements in magazines that are distributed in Florida, attends the Miami International Boat Show once per year, and communicates with Willmar via email approximately ten times per week. Courts have held that far more extensive contacts were insufficient to support general jurisdiction. For example, in Bearry v. Beech Aircraft Corp., the Fifth Circuit concluded that sales of $250 million, made via independent dealers located in the forum state, were insufficient to support general jurisdiction. 818 F.2d 370 (5th Cir. 1987). Furthermore, placement of advertisements in magazines distributed in a forum state is insufficient to support a finding of "systematic and continuous" contacts. Weinstein, 115 F. Supp. 2d at 673. "General jurisdiction has been found lacking even where a company had employees, agencies and salespeople regularly in the forum; where the company was qualified to do business in the forum; and where it regularly solicited business and derived more than 26% of its income from the forum." Associated Transp. Line v. Productos Fitosanitarios Proficol El Carmen, S.A., 197 F.3d 1070, 1075 (11th Cir. 1999) (citing Noonan v. Winston Co., 135 F.3d 85, 93-94 (1st Cir. 1998)). The extremely limited contacts presented in this case between Defendant Fountaine and the state of Florida simply do not rise to the level of "systemic and continuous" contacts required for the Court to assert general jurisdiction over Fountaine.

Plaintiff also argues that the Court has specific jurisdiction over Defendant Fountaine, pursuant to section (1)(a) of the Florida long-arm statute, which establishes specific jurisdiction where a defendant does any of the following acts – "operating,

conducting, engaging in, or carrying on a business or business venture in the state or having an office or agency in this state" – and the cause of action arises out of that act. Fla. Stat. § 48.193(1)(a). "In order to establish that a defendant is 'carrying on business' for the purposes of the long-arm statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." Future Tech. Today v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir. 2000). The Eleventh Circuit analyzed the kinds of actions that constitute "carrying on a business," and those that do not, in Sculptchair. There, the court concluded that there was personal jurisdiction pursuant to this provision of the long-arm statute over a defendant who acted as an independent contractor and sporadic sales representative for the Canadian company, circulating a price list, giving product presentations, and forwarding messages from customers to the main office in Canada. 94 F.3d at 627-28. In contrast, the court concluded that there was insufficient business activity to support jurisdiction over the other defendants, whose only activities in Florida included a series of telephone conversations, a meeting to facilitate a contract, and several brief logistical meetings. Id. at 628.

Although the activities of Defendant Fountaine in this case fall somewhere between the two extremes illustrated in Sculptchair, the Court concludes that they do not rise to the level of business activity found to support specific jurisdiction under section 1(a). Fountaine's representatives are present in Florida at most once per year, when they attend the Miami International Boat Show, where they make no direct sales themselves. Although they communicate with Willmar, they do so from their home office in France, and the record shows no evidence of extensive meetings or other

8

business activities between Fountaine and Willmar within the state of Florida. The advertising that Fountaine places in magazines circulated in Florida is also of a limited and passive nature, and cannot be seen as "carrying on a business." Finally, and perhaps most importantly, Plaintiff's cause of action in this case does not appear to arise out of any of these contacts with the state of Florida.[2] Therefore, the Court concludes that Fountaine's limited contacts with the state of Florida do not constitute "carrying on a business," and thus, do not satisfy section 1(a) of the long-arm statute.

### C.    Federal Rule of Civil Procedure 4(k)(2)

Concluding that the Florida long-arm statute does not establish jurisdiction over Fountaine, the Court now turns to Federal Rule of Civil Procedure 4(k)(2). This Rule provides that "[f]or a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2). "Jurisdiction 'consistent with the Constitution and laws of the United States' is that which comports with due process." Consolidated Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1291 (11th Cir. 2000). Due process requires that a non-resident

---

[2] The Plaintiff appears to rely on allegations of an agency relationship between Willmar and Fountaine to show that this case arises out of Willmar's actions in the state of Florida, which should be imputed to Fountaine. However, as this Court previously held, in an Order issued on February 11, 2008 [DE 73], Willmar is not the agent of Fountaine for warranty purposes because any such agency relationship was specifically disclaimed in the Sales Contract. Plaintiff asserts that this disclaimer is void under Florida law because it was not printed in conspicuous type. However, as explained in further detail in this Court's previous Order, Florida law requires only that warranty disclaimer language be printed in conspicuous type, and has no similar requirement for disclaimers of agency relationships.

Defendant must have certain minimum contacts with the forum so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial notice. Id. (citing Int'l Shoe v. Washington, 326 U.S. 310, 316 (1945)).

The nature of the required minimum contacts differs, depending upon whether the Plaintiff is asserting specific or general personal jurisdiction. Consolidated, 216 F.3d at 1291. "Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint." Id. "General personal jurisdiction, on the other hand, arises from a defendant's contacts with the forum that are unrelated to the cause of action being litigated." Id. at 1292. To establish general jurisdiction, the Plaintiff must make a showing of "continuous and systematic general business contacts" between the Defendant and the forum. Id. As discussed in greater detail above, Fountaine's contacts with the state of Florida fall far below the threshold required for a finding of general jurisdiction, and the only additional contacts that Fountaine appears to have with the United States are a handful of appearances at the Annapolis Boat Show. This is insufficient to establish general jurisdiction in the United States.

However, the Court must also consider whether Plaintiff has shown sufficient minimum contacts between Fountaine and the United States to support specific jurisdiction. At most, Plaintiff can argue that this cause of action arises out of contacts between Fountaine and either Florida or the United States Virgin Islands.[3] The Sales

---

[3] Plaintiff asserts that Fountaine's breach of its Magnuson-Moss Act obligations occurred in Florida "since Fountaine and Willmar failed to provide Plaintiff a copy of the written warranty before the Contract was signed and where they subsequently failed to respond to or resolve Plaintiff's warranty claims." (Response [DE 93], p. 18.) However

Contract between Willmar and the Plaintiff was executed in the United States. However, the vessel was shipped to Martinique, and ultimately taken to Tortola in the British Virgin Islands. Plaintiff appears to argue that because the Sales Contract was signed in the United States, the vessel was purchased there, and thus, the breach of the Magnuson-Moss Warranty Act occurred in the United States. However, Plaintiff fails to recognize that Defendant Fountaine was not a signatory to the Sales Contract. Fountaine's omissions, even if they constitute a violation of the Magnuson-Moss Act, do not constitute "contacts" for purposes of establishing personal jurisdiction. "It has long been recognized that a court has the minimum contacts to support specific jurisdiction only where the defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Consolidated, 216 F.3d at 1291 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). Plaintiff's claim does not arise out of any actions on the part of Defendant Fountaine that could be construed as "purposely availing itself" of the privilege of conducting activities in the United States. To adopt Plaintiff's reasoning would be to conclude that the Plaintiff and Willmar could have executed the Sales Contract in any forum, and subject Fountaine to personal jurisdiction in that forum, regardless of whether or not Fountaine had any actual contacts with the forum out of which the claim arose. Such reasoning is inconsistent with the requirements of due process.

---

Defendant states that the Sales Contract was executed in the United States Virgin Islands, citing to deposition testimony. (Reply [DE 94], p. 6.) The Court need not resolve this factual issue. It is irrelevant whether the "sale" of the vessel occurred in the United States Virgin Islands or in Florida, because in the analysis under Rule 4(k)(2), the Court looks to all contacts with the United States as a whole in determining whether jurisdiction can be asserted. See Consolidated, 216 F.3d at 1291.

11

Accordingly, the Court concludes that Plaintiff has not demonstrated sufficient minimum contacts to establish personal jurisdiction over Defendant Fountaine pursuant to Rule 4(k)(2).

## III.  Conclusion

For the foregoing reasons, the Court concludes that there is no legal basis on which it could assert personal jurisdiction over Defendant Fountaine and, thus, Fountaine must be dismissed from this case. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendant Fountaine's Motion to Dismiss Amended Complaint [DE 60] is **GRANTED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 8th day of July, 2008.

JAMES I. COHN
United States District Judge

Copies provided to:

Counsel of record